**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVID WHINHAM and STEPHEN EVANS,

    Plaintiffs,                          Case No.

v.                                                  Hon.

PVF VENTURES, LLC f/k/a
DV VOLLEYBALL HOLDINGS, LLC,

    Defendant.

## COMPLAINT

Plaintiffs David Whinham ("Whinham") and Stephen Evans ("Evans", and collectively with Whinham, "Plaintiffs") bring this action against Defendant PVF Ventures, LLC f/k/a DV Volleyball Holdings, LLC ("PVF Ventures" or "Defendant") and allege as follows:

### NATURE OF ACTION

1. This straightforward breach of contract action arises out of Defendant's failure to pay to Plaintiffs money owed under an agreement for the sale of certain Class A shares of a Delaware limited liability company called Pro Volleyball Federation, LLC ("PVF").

2. On February 12, 2024, Plaintiffs and Defendant, among others, entered into a contract styled "Agreement for the Sale of Pro Volleyball Federation, LLC Class A Units and Founders Separation Agreement" (the "Unit Sale Agreement").

3. Under the Unit Sale Agreement, Defendant purchased 1,089,000 Class A Units of PVF from Plaintiffs, which represented 100% of PVF's outstanding Class A Units and at least 72.6% of all of PVF's outstanding equity interests, for $1,000,000.00 (the "Purchase Price").

4. The Purchase Price was to be paid to Plaintiffs in two $500,000.00 installments. The first installment was due two (2) days after the Parties executed the Unit Sale Agreement, and

it was timely paid. The second installment payment was due on the Unit Sale Agreement's six (6) month anniversary—*i.e.,* on August 12, 2024—subject to certain conditions precedent, which were satisfied and are discussed below.

5. Upon Plaintiffs' satisfaction of the conditions precedent, Plaintiffs requested payment from Defendant by the August 12, 2024 due date, but Defendant failed to pay.

6. On August 13, 2024, and again on August 14, 2024, Plaintiffs' counsel reached out to Defendant's counsel to inquire about the status of the second installment payment.

7. On August 16, 2024, Plaintiff Whinham wrote to a representative of Defendant seeking the $500,000.00 balance owed to him and Plaintiff Evans.

8. On August 20, 2024, Plaintiffs' counsel at the Porter Wright law firm in Columbus, Ohio contacted Defendant's counsel by telephone and demanded payment of the outstanding $500,000.00 due and owing to Plaintiffs.

9. By letter dated September 6, 2024, Plaintiffs' counsel in this action again demanded payment of the outstanding $500,000.00 no later than September 11, 2024. Plaintiffs advised Defendant that they would consider the matter concerning payment of the second installment resolved upon full satisfaction of the balance by the September 11 due date, otherwise Plaintiffs intended to bring a lawsuit for the $500,000.00 balance, plus accrued interest and fees as the Unit Sales Agreement provides.

10. Defendant has failed to pay the second installment of the Purchase Price and is in breach of the Unit Sale Agreement, thereby giving rise to this action.

## THE PARTIES

11. Plaintiff David Whinham is an individual residing in the State of Ohio. Whinham is one of the two co-founders of the PVF. At all relevant times herein, Whinham was a citizen and resident of Ohio.

12. Plaintiff Stephen Evans is an individual residing in the State of Texas. Evans is also a co-founder of PVF. At all relevant times herein, Evans was a citizen and resident of Texas.

13. Defendant PVF Ventures, LLC is a limited liability company organized under the laws of Michigan. Defendant's historical name, and the name under which it executed the Unit Sale Agreement, was DV Volleyball Holdings, LLC. Upon information and belief, Defendant's principal place of business under both names was and is in Grand Rapids, Michigan, with a business address located at 200 Ottawa NW, Suite 800, Grand Rapids, Michigan 49503.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy, exclusive of interests and costs, exceeds $75,000.00.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) as Defendant is located in Grand Rapids, Michigan and a substantial part of the events giving rise to this claim were performed by PVF Ventures in Michigan.

16. Additionally, this court has personal jurisdiction over Defendant because, upon information and belief, Defendant transacts business in, and entered and executed the Unit Sale Agreement from, Grand Rapids, Michigan, and because the Unit Sale Agreement provides that any dispute or controversy arising under the agreement "shall be adjudicated by a court of competent jurisdiction located in the State of Michigan."

## FACTUAL ALLEGATIONS

**I.     Plaintiffs' Formation of the Pro Volleyball Federation, LLC**

17.     In 2022, Plaintiffs created and launched Pro Volleyball Federation, LLC—the preeminent women's professional volleyball league in the United States. Pro Volleyball Federation is now also known as PVF.

18.     At its formation, PVF was owned entirely by Pro Volleyball Holdings, LLC ("Pro Volleyball Holdings"). Pro Volleyball Holdings is wholly owned by The TEAM Management, LLC ("The TEAM") and The Remedy, which are entities owned by Whinham and Evans, respectively.

19.     In addition to owning equity in PVF, The TEAM agreed to provide management and employment services to PVF through a Management Services Agreement dated December 1, 2022, and thereafter superseded and replaced by a Management Services Agreement dated August 1, 2023.

20.     In December 2022, Plaintiffs announced the sale of their first franchise, which would come to be named the Grand Rapids Rise, to West Michigan Volleyball, LLC ("WMV"). On information and belief, WMV and Defendant PVF Ventures are affiliates by common or substantially common ownership.

21.     Throughout 2023, Plaintiffs marketed other franchise teams in various cities across the United States. In addition to Grand Rapids, Plaintiffs ultimately found purchasers (the "PVF Team Owners") for franchise teams in Atlanta, Columbus, Dallas, Indianapolis, Kansas City, Las Vegas, Omaha, and Orlando.

22.     By February 2024, when the Unit Sale Agreement was executed, PVF's Class A equity units represented 72.6% of its total equity. The remaining 27.4% of PVF's equity was

allocated to Class B, Class C, and Class D equity units, which were held by investors who included some of the PVF Team Owners and other individuals.

## II.     Plaintiffs' Sale of PVF's Class A Units to Defendant

23. From January 2023 to August 2023, Plaintiffs actively marketed PVF's fledgling volleyball league to prospective team franchise ownership groups. In or about February 2023, Daniel White and his group (the "White Group") purchased the Omaha franchise.

24. In or about August 2023, the White Group executed a Team Charter Agreement to purchase the Las Vegas franchise, though the White Group's acquisition of the Las Vegas franchise would later become known by the Plaintiffs to be accomplished through misrepresentation and other nefarious means, performing an end-around of the league's policy against a single group having majority ownership and control of multiple league franchises.

25. By December 2023 additional information came to light, and it became apparent to Plaintiffs that the White Group was in the process of executing a leveraged corporate takeover of PVF. Because Plaintiffs believed that such a development would be bad for PVF and its fledgling league, Plaintiffs tried to resist Mr. White's takeover.

26. In December 2023, it became clear to Plaintiffs that they would not be able to resist the White Group's takeover campaign without the backing of other team owners. In a show of support for the league, WMV helped to shore up the league's operating cash flow and stated that the White Group should be removed from the league.

27. In December 2023 and January 2024, the White Group continued its efforts to gain control of the league. With the start of the league's inaugural season quickly approaching, WMV changed its position on White's immediate removal and sought to cooperate with the White Group, at least through the 2024 league season.

28. In January 2024, it became evident to the Plaintiffs that the only way to begin the league's 2024 season on time, and without damaging public disclosure of the White Group's behind-the-scenes take-over campaign, was for the Plaintiffs to step back from the league.

29. Consequently, Plaintiffs began discussing the sale of their interest in PVF to WMV.

30. These discussions were principally carried out by Plaintiffs and WMV representative, Scott Gorsline ("Gorsline"), who purportedly represented WMV principal owner Daniel DeVos.

31. On February 12, 2024, the Plaintiffs and PVF Ventures (upon information and belief, a company formed by and between WMV and other team owners for the purpose of the PVF equity acquisition) executed the Unit Sale Agreement whereby the Plaintiffs sold all of their interest in PVF to PVF Ventures for $1,000,000.00. The Unit Sale Agreement provides, in pertinent part:

> **The Acquisition:** ACQUIRER [PVF Ventures] hereby acquires, for the Purchase Price and other consideration further described in this Agreement, 1,089,000 Class A Units (the "Acquired Units"), representing 100% of the outstanding Class A units and 72.6% of all outstanding equity interests of PVF (this number will change/increase if Kansas City converts their $400,000 of Class B equity into an installment payment towards their franchise fee as currently contemplated). PVF HOLDINGS and the FOUNDERS [Whinham and Evans] represent that (a) PVF HOLDINGS holds all of the outstanding Class A Units of PVF and (b) other than the FOUNDERS, there are no other members or equity holders of PVF HOLDINGS.
>
> For the avoidance of doubt, the Acquired Units are hereby sold, transferred and assigned by PVF HOLDINGS to ACQUIRER upon execution of this Agreement, free and clear of all liens, claims, and security interests.
>
> . . .
>
> **Purchase Price:** The purchase price for the Acquired Units shall be One Million Dollars ($1,000,000.00) (the "Purchase Price"). Except

as set forth herein and subject to the representations herein, there shall be no further adjustments based on ACQUIRER diligence review or other factors.

32. The Unit Sale Agreement also provides that payment of the Purchase Price, as defined therein, would be made in two equal installments:

> **Payment of Purchase Price:** The Purchase Price shall be payable individually to Mr. Whinham and Mr. Evans as follows: (i) the sum of Five Hundred Thousand Dollars ($500,000.00) shall be paid to FOUNDERS by wire transfer within two (2) business days of the execution of this Agreement; and (ii) **provided that PVF** (or an entity that derived from and its league and team operators) **is still operating on the six (6)-month anniversary of this Agreement and a forensic audit conducted by PVF within the six (6)-month period does not demonstrate that Malfeasance (as defined below) occurred on the part of the FOUNDERS** with respect to the financial management or marketing of PVF prior to the date hereof, **Five Hundred Thousand Dollars ($500,000.00) shall be paid to FOUNDERS on the six (6)-month anniversary of the execution of the Agreement.** "Malfeasance" shall mean criminal fraud, embezzlement, theft, misappropriation of funds or, with respect to financial matters, material breach of the governing documents of PVF or the Management Services Agreement by and between PVF and The TEAM Management LLC (the "MSA"). (emphasis added).

33. Additionally, the Unit Sale Agreement established certain conditions precedent to Defendant's obligation to pay the second installment of the Purchase Price:

> **Representations and Covenants:** … (10) Except with respect to 2022 and 2023 federal tax returns for PVF, PVF has filed all tax returns required to be filed by PVF and all such tax returns are true, correct, and complete. To the extent tax returns (federal, state, local, payroll, or other) that were due during a tax period ending prior to the date of this Agreement have not been filed (the "Tax Returns"), **the FOUNDERS covenant to, at their sole cost, expeditiously cause the Tax Returns to be prepared and filed**. The FOUNDERS shall be solely responsible for timely payment of any tax liability, interest, penalties, and other costs associated with the Tax Returns; and the FOUNDERS shall indemnify ACQUIRER and PVF against any claims or liabilities relating to the Tax Returns. **The FOUNDERS shall provide the ACQUIRER with a copy of the filed Tax Returns. The FOUNDERS' fulfillment of this**

> **covenant, to the ACQUIRER's reasonable satisfaction, within six (6) months of the date of this Agreement is a condition precedent to the ACQUIRER'S obligation to pay the second $500,000.00 installment of the Purchase Price to the FOUNDERS**. (emphasis added).

34. Thus, Plaintiffs were entitled to the second Purchase Price installment payment on August 12, 2024, subject to the following conditions: (i) PVF was still operating on the six-month anniversary of execution of the Unit Sale Agreement; (ii) PVF's forensic audit of the Plaintiffs did not reveal any "Malfeasance", as that term is defined in the Unit Sale Agreement; and (iii) Plaintiffs caused to be filed all required tax returns for any tax period prior to the date of the agreement, and provided Defendant with copies of such tax returns, within the six month period after execution of the agreement.

35. As of August 12, 2024, PVF was (and still is) an operating entity.

36. Between February 12, 2024 and August 12, 2024, Defendant never advised Plaintiffs that a forensic audit revealed that Plaintiffs committed Malfeasance, as that term is defined in the Unit Sale Agreement, nor did Defendant ever interview Plaintiffs or request any documents indicating that an investigation was taking place.

37. On August 9, 2024, Plaintiff Evans emailed Mr. Gorsline attaching electronic confirmation of the 2022 and 2023 PVF federal tax returns and the required 2022 and 2023 Regional Income Tax Agency Business Tax Returns in Ohio. Plaintiff Evans also advised Gorsline that the appropriate K-1s for both the 2022 and 2023 tax returns were sent and supplied copies of the tax returns to Mr. Gorsline.

38. Additionally, Plaintiff Evans reminded Mr. Gorsline that the $500,000.00 balance under the Unit Sale Agreement would become due on August 12, 2024, and supplied wire instructions for both Plaintiff Whinham and himself.

39. That same day, on August 9, 2024, Mr. Gorsline by email acknowledged receipt of the tax returns and noted that he and Defendant would "be in touch early next week re the payment." Mr. Gorsline also acknowledged the receipt of other deliverables in that email.

40. At no point prior to August 12, 2024 did Defendant or any of its representatives advise Plaintiffs that the PVF tax documents Plaintiffs caused to be filed were deficient for the purpose of Plaintiffs satisfying the Unit Purchase Agreement's condition to the Defendant's obligation to pay the second Purchase Price installment payment.

41. Consequently, the second Purchase Price installment payment became due and owing on August 12, 2024.

42. Defendant has not tendered the second Purchase Price installment payment.

43. On August 13, 2024, and again on August 14, 2024, Plaintiffs' counsel reached out to Defendant's counsel via email to inquire about the status of the second installment payment. To date, both of these emails remain unanswered.

44. On August 16, 2024, Plaintiff Whinham emailed Daniel DeVos, Cole DeVos, and Mr. Gorsline—representatives of Defendant PVF Ventures—to advise them that as of August 12, 2024, the second Purchase Price installment became due under the Unit Sale Agreement and that, despite efforts from both Plaintiffs and their lawyers to collect the payment, Plaintiffs had not received that payment or any information about it. To date, that communication remains unanswered.

45. On or about August 20, 2024, Plaintiffs' counsel telephoned Defendant's counsel and demanded payment of the second Purchase Price installment.

46. Still, Defendant failed to tender payment.

47. On September 6, 2024, Plaintiffs' counsel in this action sent Defendant a formal demand letter (the "Demand") for payment of the outstanding $500,000.00 second Purchase Price installment.

48. The Demand advised that Plaintiffs would consider any dispute between them and Defendant concerning the second Purchase Price installment payment resolved if Defendant made payment in full within three business days. The Demand further advised that, should Defendant fail to make payment in full within three business days, Plaintiffs would seek judicial relief, and attached a draft form of a complaint substantially similar in all material respects to this complaint.

49. Because Defendant, in contravention of its express obligations under the Unit Sale Agreement, has failed to pay to Plaintiffs any amount on account of the second Purchase Price installment Payment, Plaintiffs bring this action against Defendant for breach of contract.

## FIRST CAUSE OF ACTION
## (Breach of Contract)

50. Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs above as if fully stated herein.

51. The Unit Sale Agreement is a valid and binding contract between Plaintiffs, Defendant, PVF, Pro Volleyball Holdings, The TEAM, and The Remedy.

52. The Unit Sale Agreement establishes that Defendant was required to pay Plaintiffs the second $500,000.00 Purchase Price installment in exchange for Plaintiff's sale and relinquishment of 100% of PVF's Class A Units. Specifically, within the first six months of execution of the Unit Sale Agreement—*i.e.,* between February 12, 2024 and August 12, 2024—Defendant was required to pay the second installment if (i) PVF was still an operating entity as of August 12, 2024; (ii) PVF found no Malfeasance on the part of the Plaintiffs; and (iii) Plaintiffs filed all required federal, state, and local tax returns.

53. As of August 12, 2024, PVF was, and still is, an operating entity.

54. By August 12, 2024, Defendant had not found any Malfeasance on the part of the Plaintiffs, as that term is defined under the Unit Sale Agreement.

55. On August 9, 2024, Plaintiffs delivered to Defendant, and Defendant acknowledged receiving, the tax returns.

56. Thus, by August 12, 2024, Plaintiffs had performed all of their obligations under the Unit Sale Agreement and were entitled to the second Purchase Price installment payment. But to date, Defendant has breached its contractual obligation to pay Plaintiffs the second Purchase Price installment under the Unit Sale Agreement.

57. Accordingly, the Court should grant judgment in favor of Plaintiffs finding that Defendant is liable for its breach of the Unit Sale Agreement, and should order Defendant to pay the second $500,000.00 Purchase Price installment, plus any costs, fees (including attorneys' fees) and any and all applicable statutory interest to which Plaintiffs are entitled.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs David Whinham and Stephen Evans pray for relief and judgment, as follows:

A. Awarding $500,000.00 in damages in favor of Plaintiffs Whinham and Evans against Defendant PVF Ventures for breach of contract, including interest thereon;

B. Awarding Plaintiffs Whinham and Evans their reasonable costs and expenses incurred in this action, including attorneys' fees;

C. Such other relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand trial by jury on all issues triable by jury.

Dated: September 17, 2024

    Respectfully submitted,

    **BUTZEL LONG, P.C.**

    By: /s/ *Christopher J. Zdarsky*
    Lee T. Silver (P36905)
    Christopher J. Zdarsky (P81809)
    300 Ottawa Avenue NW, Suite 620
    Grand Rapids, MI 49503
    Tel: (616) 988-5600
    silver@butzel.com
    zdarsky@butzel.com

    -and-

    **WOLLMUTH MAHER & DEUTSCH LLP**

    Brad J. Axelrod (phv forthcoming)
    Adam M. Bialek (phv forthcoming)
    Alexandra C. Spina (phv forthcoming)
    500 Fifth Avenue, 12th Floor
    New York, NY 10110
    Tel: (212) 382-3300
    baxelrod@wmd-law.com
    abialek@wmd-law.com
    aspina@wmd-law.com

    *Counsel for Plaintiffs David Whinham and Stephen Evans*